PER CURIAM.
¶ 1 Adam Rogers appeals his conviction on twenty counts of possessing child pornography and an order denying his postconviction motion. Rogers seeks a new trial upon alternative theories of plain error or ineffective assistance of counsel, each based on the unchallenged admission of testimony from an expert witness as to whether Rogers had "knowingly" possessed the child pornography. We conclude that any error in the admission of the testimony was harmless, and that Rogers was not prejudiced by trial counsel's failure to object. Accordingly, we affirm the judgment of conviction and postconviction order.
BACKGROUND
¶ 2 On August 18, 2012, a housemate of Rogers discovered, in a recent download section on Rogers' computer, a video of a young child performing oral sex on an adult male. The housemate, Hannah Davis, called her husband at work to tell him what she had seen on Rogers' computer. The husband came home from work and confronted Rogers, who "put his head down to the ground" and said, "don't think of me like that." Meanwhile, Davis also called her mother, the mother contacted the police, and the police obtained a search warrant and seized the computer.
¶ 3 Detective Brian Drumm questioned Rogers. Rogers told Drumm that he builds computers out of second-hand parts and that the seized computer was one that he had built. Rogers said that he had added a second, larger hard drive to the computer only two weeks earlier, and that the drive had not been attached to any computer for the previous four to five months. Rogers claimed that he deleted anything he saw on second-hand hard drives that he thought was child pornography. Rogers also told Drumm something along the lines of "sometimes you download things thinking that it's one thing but it's actually something else," and, if he finds it is something else, he deletes it. When Drumm asked Rogers if there was any child pornography currently on his computer, Rogers responded that there might be because it was a very large hard drive and he had not gone through everything on the hard drive.
¶ 4 In relation to who had access or who had used the computer under what name, Davis testified that she and her husband had lived with Rogers for about a month, and that she occasionally used Rogers' computer to check her Facebook account. Rogers testified that he had never seen Davis's husband use the computer. Rogers' former housemate, James Braun, testified that he and his girlfriend had lived with Rogers until May of 2012, but that he had never used the computer or seen his girlfriend using the computer. Rogers told Drumm that he used his full name, Adam Eugene Rogers, for his user profile on email and messenger accounts.
¶ 5 Mark Howard, a forensic digital examiner from the Wisconsin Department of Justice, testified as an expert witness for the State. Howard examined Rogers' computer hard drives and discovered over 40,000 images and over 100 videos of child pornography and "child erotica," mostly stored in a folder labeled "Blind Guardian." The specific images and videos forming the basis for the twenty counts charged in this case were created between May 23, 2010 and August 1, 2012, and each was last accessed between April 1, 2012 and August 23, 2012. Howard explained that, if the files had been accessed by some automated program such as a virus protection program, he would expect the access dates to be sequential.
¶ 6 Howard's examination of the internet history on one of the hard drives showed that, on November 3, 2010, someone using the user name Adam Eugene Rogers logged into a Yahoo gaming website and, eighteen minutes later, a file was downloaded that contained numerous images of "child erotica" and child pornography. The images were stored in a file folder that was password protected with the code "lolita888." On August 10, 2012, a nine-minute video of a girl showering and masturbating was played. Immediately afterword, someone using the profile Adam Eugene Rogers logged into a gaming website. The browsing history from July and August of 2012 included terms such as "little girl bath time," "little girl underwear," "Russian child swimsuit models," "Russian beach children," "young hot virgins spreading pussies," and "hot naked teens getting fucked."
¶ 7 Howard concluded his testimony by opining-without objection-that, based upon what Howard had reviewed on Rogers' hard drives, Howard believed that Rogers "did knowingly possess child pornography." It is this testimony which formed the basis for Rogers' postconviction motion, and the subject of this appeal, for a new trial based upon a theory of plain error.
¶ 8 The manager and sole employee of a computer store testified that he sold Rogers a used hard drive in June of 2012. It was the store's policy to erase and reformat used hard drives before selling them, although the manager had no specific recollection whether the particular hard drive sold to Rogers had been reformatted.
¶ 9 Rogers took the stand in his own defense and testified that he got computer components from multiple sources, including from friends and picking up junked computers on curbs, and that he did not typically erase them before installing them because he liked to see if there was anything on them like games or music that he could keep. Rogers agreed that he bought a used hard drive from the manager of the computer store in June, but he claimed that another employee had allowed him to exchange it several weeks later, and that it was the exchanged drive that was on the computer when it was seized. Rogers also agreed that the purpose of adding the additional hard drive was for storage, and that 40,000 images and over a hundred videos would take up a lot of storage. Rogers denied that he had any internet access in 2010 or 2011, claiming that he did not get it until about March 2012, although he acknowledged that an internet connection would not be necessary to transfer files from one disc to another. Rogers said that he did not have any housemates in 2010. Finally, Rogers also admitted that he had moved to Michigan while on bond for this offense and needed to be extradited.
STANDARD OF REVIEW
¶ 10 Whether the circuit court's erroneous admission of evidence was harmless presents a question of law that this court reviews independently. State v. Hunt , 2014 WI 102, ¶ 21, 360 Wis. 2d 576, 851 N.W.2d 434.
¶ 11 Claims of ineffective assistance of counsel present mixed questions of law and fact. Strickland v. Washington , 466 U.S. 668, 698 (1984). We will not set aside the circuit court's factual findings about what actions counsel took or the reasons for them unless they are clearly erroneous. State v. Pitsch , 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). However, whether counsel's conduct violated the constitutional standard for effective assistance of counsel is ultimately a legal determination that this court decides de novo. Id.
DISCUSSION
¶ 12 For the purpose of this opinion, we will assume, without deciding, that the admission of the expert witness's opinion as to Rogers' knowledge constituted plain error and that counsel's failure to object constituted deficient performance. See generally State v. Jorgensen , 2008 WI 60, ¶ 21, 310 Wis. 2d 138, 754 N.W.2d 77 (discussing the plain error rule); State v. Dalton , 98 Wis. 2d 725, 298 N.W.2d 398 (Ct. App. 1980) (holding that an expert witness cannot testify as to a defendant's intent); State v. Swinson , 2003 WI App 45, ¶ 58, 261 Wis. 2d 633, 660 N.W.2d 12 (discussing the two-part test for ineffective assistance of counsel). Our discussion is therefore limited to whether the presumed error was harmless, and whether Rogers was prejudiced by counsel's failure to object.
¶ 13 An error is harmless when it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. State v. Harris , 2008 WI 15, ¶ 43, 307 Wis. 2d 555, 745 N.W.2d 397. We conclude that is the case here.
¶ 14 It was undisputed that the child pornography was located on Rogers' computer. The dates the files were created and accessed spanned periods of times when Rogers had different housemates and no housemate at all, and there was no indication that anyone other than Rogers used the computer with any frequency or had access to it over the entire time frame. The browser logs showed that someone logged onto a gaming site on approximately November 3, 2010, and that contradicted Rogers' claim that he did not have internet access in 2010, and the logs from both 2010 and 2012 showed that child pornography was downloaded or viewed in close temporal proximity to when someone using Rogers' user profile was online. Rogers' claim that another employee of the computer store had exchanged the hard drive Rogers bought there was contradicted by the manager's testimony that he was the sole employee at that time, and the fact that the store routinely erased and reformatted used hard drives before reselling them undermined Rogers' contention that the hard drive already had child pornography on it when Rogers installed it. Rogers' responses when confronted about the child pornography on his computer and his flight to another state could be fairly interpreted as consciousness of guilt.
¶ 15 We agree with the circuit court's conclusion, stated in its comprehensive postconviction decision, that the evidence against Rogers was overwhelming. Given the amount of child pornography on the computer, and given the number of different times it was downloaded and accessed, it is clear beyond a reasonable doubt that a reasonable jury would have concluded that Rogers' possession of the child pornography was knowing, even without the computer expert's opinion on that point. Therefore, the admission of the expert's opinion was harmless error.
¶ 16 The test for harmless error is "essentially consistent with the test for prejudice in an effective assistance of counsel claim," except that it is the State who bears the burden of proof. State v. Harvey , 2002 WI 93, ¶ 41, 254 Wis. 2d 442, 647 N.W.2d 189. Having concluded that the State met its burden to show that the admission of the expert witness's opinion on the knowledge element was harmless, we further conclude based upon the strength of evidence at trial that Rogers cannot meet his own burden to show prejudice from counsel's failure to object. We therefore also reject Rogers' ineffective assistance of counsel claim.
By the Court.- Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).